IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SANDRA B. WILLIAMS, | : CIVIL ACTION NO. |
| | : 1:18-CV-1796-TCB-JSA |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| U.S. BANK NATIONAL ASSOCIATION, | : |
| as Trustee, on Behalf the Holders of the | : |
| Home Equity Asset Trust 2006-5 Home | : |
| Equity Pass Through Certificates, Series | : |
| 2006-5, and SELECT PORTFOLIO | : |
| SERVICING, LLC, | : **ORDER AND FINAL REPORT** |
| | : **AND RECOMMENDATION ON A** |
| Defendants. | : **MOTION TO DISMISS** |

Plaintiff Sandra B. Williams, proceeding *pro se*, filed the above-captioned

action on April 26, 2018. Plaintiff is a homeowner who has brought this action to

dispute a foreclosure of her property in Conyers, Georgia. The action is now before

the Court on the Defendants' Motion to Dismiss [9] and the Defendants' Motion to

Stay Discovery and Pretrial Deadlines [11]. In the Motion to Dismiss, Defendants

have moved to dismiss all claims for failure to state a claim for relief. The Court

agrees with Defendants that the Complaint fails to state a claim because all the

theories articulated are clearly meritless as a matter of law. Accordingly, for the

reasons discussed below, the undersigned **RECOMMENDS** that the Defendants'

Motion to Dismiss [9] be **GRANTED**, and that all claims in this action be

**DISMISSED** for failure to state a claim. In addition, the Defendants' Motion to Stay Discovery and Pretrial Deadlines [11] is **GRANTED IN PART, DENIED IN PART**.

## I.   BACKGROUND

The following allegations are taken from Plaintiff's Complaint [3] and are assumed to be true for the purpose of resolving the Defendants' Motion to Dismiss [9]. Plaintiff alleges that, on March 24, 2006, she purchased a home located at 2736 Lakeside Drive Southwest, Conyers, Georgia 30094 (the "Property"). Comp. [3] ¶ 2. Plaintiff alleges that she purchased the Property with a mortgage loan that she alleges was furnished by the Mortgage Electronic Registration System ("MERS"), as nominee for her original lender, Encore Credit Corporation. *Id.* ¶ 3.

According to Plaintiff, "[i]n or around October 2007 Encore Credit Corporation was acquired by Bear Stearns however there is no evidence of a transfer of mortgage." *Id.* ¶ 4. Plaintiff alleges that "Plaintiff violated 12 C.F.R. 1026.39(b)(1) as Defendant never received evidence of said transfer."[1] *Id.* A "Corporate Assignment of Mortgage" was recorded on March 12, 2013 in the Rockdale County Superior Court from MERS to Defendant U.S. Bank National

---

[1] The Court assumes that Plaintiff's references to "Plaintiff" and "Defendant" were mistakenly transposed in this sentence. Thus, the Court assumes that Plaintiff intended to allege that one or both of the Defendants committed this violation by not furnishing her with evidence of the alleged transfer.

Association ("U.S. Bank"), as trustee, on behalf of a home equity asset trust, c/o

Defendant Select Portfolio Servicing ("SPS"). *Id*. ¶ 7.

Plaintiff alleges that, on September 29, 2017, she filed a document that she

refers to as an "Affidavit of Notice," pursuant to Article V and the Fourteenth

Amendment to the U.S. Constitution and certain sections of the Georgia Code, "after

she discovered the Defendant trust misrepresented its status." *Id*. ¶ 8. Plaintiff also

"procured an 'Affidavit of Fraud' from Certified Fraud Examiner Bertrand Falls who

examined the above-referenced 'Corporate Assignment' and concluded the

signatures were made by 'robo-signors' who did not have the requisite authority to

legally effectuate a transfer of mortgage and concluded the Assignment is void."

*Id*. ¶ 9.

Plaintiff also states that:

> In or around January 2017 Plaintiff modified her mortgage with
> Defendant and was offered an increase of payment from $1300 to
> $1900. When Plaintiff objected to the increase Defendants started
> foreclosure proceedings in violation of 12 C.F.R. § 1024.

*Id*. ¶ 23.

## II.   DISCUSSION

### A.   *Standard on a Motion to Dismiss*

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint

need only contain "a short and plain statement of the claim showing that the pleader

is entitled to relief," in order to "give the defendant fair notice of what the . . . claim

is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The Defendants

have moved to dismiss all of Plaintiff's claims under Rule 12(b)(6) of the Federal

Rules of Civil Procedure for failure to state a claim for relief. *See* Fed. R. Civ. P.

12(b)(6). When evaluating a motion to dismiss under Rule 12(b)(6), the Court cannot

consider matters outside of the pleadings, and must accept the allegations of the non-

movant's pleadings as true, but "[t]o survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell

Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, "a plaintiff's

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

Iqbal went on to instruct that, while a court must accept all factual allegations

in a complaint as true, it need not accept as true legal conclusions recited in a

complaint. Repeating that "only a complaint that states a plausible claim for relief

survives a motion to dismiss" the Supreme Court advised that "[d]etermining

whether a complaint states a plausible claim for relief will . . . be a context-specific

task that requires the reviewing court to draw on its judicial experience and common

sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (*quoting* Fed. R. Civ. P. 8(a)(2)) (other citations omitted).

Although the Supreme Court requires a plaintiff to allege sufficient facts to state a plausible claim for relief, because Plaintiff is proceeding *pro se* in this case, the Complaint must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.*; *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice"). Even though a *pro se* complaint is held to less stringent standards than formal pleadings drafted by attorneys, "the Court need not accept as true legal conclusions or unwarranted factual inferences." *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2006).[2]

---

[2] The Court is also required to provide a *pro se* litigant an opportunity to replead a deficient complaint before dismissal, unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (*en banc*) (explaining that a district court should give a *pro se* plaintiff an opportunity to amend his complaint if such amendment would not be futile). In this case, as explained more fully below, the deficiencies in Plaintiff's Complaint do not consist simply of insufficient or vague facts or other matters that could be cured in an amended pleading. Rather, Plaintiff

B.      *Plaintiff's Claims*

1.      Truth in Lending Act

Although it is not separately delineated in the Complaint, the Court liberally construes the Complaint as asserting a violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.*, based on the allegation that Defendants violated 12 C.F.R. § 1026.39(b)(1)[3] by not furnishing notice of a 2007 transfer of her mortgage. Even if this transaction were otherwise required to be disclosed under TILA,[4] this claim fails for at least two reasons.

First, any TILA nondisclosure violation accrues "when the transaction is consummated," and any claim must be brought within one year thereafter. *In re* Smith, 737 F.2d 1549, 1552 (11th Cir. 1984); *see* 15 U.S.C. § 1640(e). In this case, Plaintiff refers to an alleged transaction in 2007 that was allegedly not disclosed to

---

asserts plainly meritless legal theories as a matter of law. Thus, any opportunity to amend these claims would be futile and dismissal is appropriate.

[3] The cited regulation implements and was promulgated under TILA. *See* 12 C.F.R. § 1026.1(a).

[4] The Complaint does not appear to allege facts to suggest that the alleged acquisition of Encore by Bear Stearns was necessarily required to be disclosed under 12 C.F.R. § 1026.39, which generally refers to disclosures of sales or transfers of mortgages. That Encore, which according to Plaintiff's complaint was not even the creditor that owned the mortgage, may have been acquired by another company does not necessarily mean that the mortgage itself was sold or transferred.

6

her. Such a claim long since expired prior to this 2018 lawsuit. Thus, the claim is

time-barred.

Second, Plaintiff has not asserted any claims against either of the parties

supposedly involved in the 2007 transfer (Encore and Bear Stearns) and Plaintiff's

factual allegations explain that neither Defendant in this case was involved with this

Property until six years later. A TILA violation by a creditor can be brought against

an assignee of that creditor only "if the violation for which such action or proceeding

is brought is apparent on the face of the disclosure statement." 15 TILA U.S.C.

§ 1641(a). Plaintiff does not allege any basis to conclude that a violation was

"apparent on the face" of any disclosure statement, and therefore she has stated no

claim for relief against Defendants. Accordingly, Plaintiff has failed to state a claim

for relief under TILA.

2.      Real Estate Settlement Procedures Act

Count I of the Complaint refers to the federal regulations governing certain

dual track foreclosure practices. Specifically, the Consumer Financial Protection

Bureau has promulgated "Regulation X" under the Real Estate Settlement

Procedures Act ("RESPA"), 12 U.S.C. § 2605(f), 12 C.F.R. § 1024.41. This

regulation provides certain obligations on servicers to consider delinquent borrowers

for available loss mitigation options and to provide information about those options

to borrowers. This regulation can be privately enforced under Section 6(f) of

RESPA, 12 U.S.C. § 2605(f). *See* 12 C.F.R. § 1024.41(a). This regulation does not, however, provide Plaintiff relief in this case.

First, Regulation X imposes only limited duties on servicers regarding the procedures for accepting and evaluating loss mitigation applications. In sum, the Regulation requires servicers to take certain steps to ensure the completeness of timely loss mitigation applications, to comply with various deadlines for consideration of applications, and to consider complete and timely applications for all available mitigation options prior to foreclosure. *See* 12 C.F.R. § 1024.41; *Clark v. HSBC Bank USA National Ass'n*, 664 F. App'x 810, 812 (11th Cir. 2016) (unpublished). Notably, however, "[n]othing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option." 12 C.F.R. § 1024.41(a).

In this case, Plaintiff alleges that in making her application, "Plaintiff sent and resent documents Defendant already had in its possession. By the time the application was 'completed' Plaintiff objected to the substantial increase given the original loan payment and her advanced age." Comp. [3] at 8 ¶ 2, 7 ¶ 23 ("Plaintiff modified her mortgage with Defendant and was offered an increase of payment from $1300 to $1900. When Plaintiff objected to the increase Defendants started foreclosure proceedings in violation of 12 C.F.R. § 1024.").

While Plaintiff may be frustrated that she was asked to "sen[d] and resen[d]" documents, she does not allege that Defendants failed to allow her to file a complete application or took any prohibited action during the pending of a loss mitigation application. Rather, it appears that Plaintiff's complaint is with the merits of the servicer's modification decision, *i.e.*, with the fact that the servicer failed to offer the modification option that Plaintiff wanted or needed. But as noted above, Regulation X does not regulate the *merits* of a servicer's decision. Indeed, nothing in RESPA or the Regulation entitles Plaintiff to any modification at all, much less one with which she agrees. Thus, Plaintiff's complaint about her modification is not cognizable.

Second, Section 6(f) of RESPA allows only recovery of actual damages and does not support injunctive relief. *See* 12 U.S.C. § 2605(f). Plaintiff does not allege facts suggesting that she suffered actual damages from a violation of Defendants' limited duties under Regulation X to offer and consider Plaintiff for available loan modification options.[5] Accordingly, Plaintiff has failed to state a claim for relief under RESPA.

---

[5] Furthermore, Regulation X only applies to "servicers of loans," not to creditors. *Bernstein v. Wells Fargo Bank, N.A.*, No. 1:15-CV-2520-RWS-CMS, 2016 WL 546653, at *4 n.3 (N.D. Ga. May 13, 2016), *report and recommendation adopted*, No. 1:15-CV-2520-RWS, 2016 WL 4546657 (N.D. Ga. June 28, 2016). The Complaint does not include any allegations as to whether Defendant Select or Defendant U.S. Bank was acting as servicer at any time. If this were the only

3.       Wrongful Foreclosure/Fraudulent Assignment

Plaintiff includes two separately enumerated, but apparently interconnected, claims, entitled "Fraudulent Assignment," and "Wrongful Foreclosure." *See* Comp. [3] at 9-11 ¶¶ 26-33, 14-15 ¶¶ 46-49. The basis of both claims, as well as Plaintiff's other remaining claims, is that the 2013 assignment by which U.S. Bank based its right to foreclose was "fraudulent" or otherwise defective. *See id.* ¶ 47. Plaintiff argues that "an assignment is invalid as a loan cannot be transferred into a trust after the closing date." *Id.* ¶ 29. Specifically, Plaintiff alleges that "[t]he closing date of the trust was 2006. The date of transfer of Defendant's assignment was 2013. Hence, Plaintiff's loan could not have been transferred into a trust that was **closed**." *Id.* ¶ 40 (emphasis in original). Plaintiff argues that transferring Plaintiff's security deed into this trust so many years after the formation of the trust violated the contractual provisions of the Pooling and Servicing Agreement executed at the original closing, the Internal Revenue Code, and the Securities Exchange Act of 1934. *Id.* ¶¶ 41-43.

The short answer to all of these claims is that Plaintiff—who was not a party to the 2013 assignment, or the Pooling and Servicing Agreement that the assignment

---

omission the Court would permit Plaintiff an opportunity to amend to clarify her claim, but that step would be futile because Plaintiff's claim fails as a matter of law for the reasons stated above.

supposedly breached, or to the trust agreement—lacks standing to bring any claims to challenge the validity of the 2013 assignment. *See Edwards v. BAC Home Loans Servicing, L.P.*, 534 F. App'x 888, 891 (11th Cir. 2013); *Montgomery v. Bank of Am.*, 740 S.E.2d 434, 436 (Ga. Ct. App. 2013) (because assignment of security deed was contractual, plaintiff lacked standing to contest its validity because he was not a party to the assignment). Indeed, it appears from the allegations that Plaintiff has defaulted on her original mortgage payments, which entitled the secured creditor to foreclose. Whether or not the previous secured creditor's rights were adequately transferred to Defendant U.S. Bank in 2013—and whether or not Defendant U.S. Bank therefore is entitled to keep the proceeds of any foreclosure—is a matter for those entities, not Plaintiff, to litigate.

Moreover, Plaintiff's claim also fails because the sole relief she seeks—a declaration or injunction setting aside the foreclosure—is unavailable on these facts. While Plaintiff may dispute which creditor has the right to foreclose, it appears undisputed that Plaintiff is in default, and she has not alleged that she has tendered any amount owed. This failure to tender deprives Plaintiff of the right to seek equitable relief to set aside the foreclosure. *See Smith v. Citizens & S. Fin. Corp*, 268 S.E.2d 157, 159 (Ga. 1980); *Mickel v. Pickett*, 247 S.E.2d 82, 87 (Ga. Ct. App. 1978). The need to tender does not derive from the elements of the wrongful foreclosure tort itself, but instead from the fundamental principle that "he who would

have equity, must do equity." *Wright v. Intercounty Props.*, Ltd., 233 S.E.2d 160, 161 (Ga. 1977); *see also* O.C.G.A. § 23-1-10 ("He who would have equity must do equity must give effect to all equitable rights of the other party respecting the subject matter of the action."). Accordingly, Plaintiff has failed to state a claim for relief under a theory of wrongful foreclosure or fraudulent assignment.

4.     Internal Revenue Code/Securities Exchange Act

As noted above, Plaintiff alleges that both the Internal Revenue Code ("IRC") and the Securities Exchange Act of 1934 prohibit Defendants from transferring any secured interest in Plaintiff's Property into a real estate trust that had "closed" several years earlier. *See* Comp. ¶¶ 41-43. At the threshold, these arguments appear to be just another way by which Plaintiff challenges the assignment to U.S. Bank. As noted above, Plaintiff lacks standing to assert such a challenge, whether under a statutory theory such as under the IRC or the Securities Exchange Act or under a contractual theory pursuant to the Pooling and Servicing Agreement. *See Williams-Grady v. Muller Real Estate Holdings, LLC*, No. 3:15-CV-55-TCB-RGV, 2015 WL 11457695, *2 n.9 (N.D.Ga. Aug. 7, 2015) (homeowner lacked standing to contest an assignment on grounds that it violated the PSA or the sections of the Internal Revenue Code that govern taxation of a Real Estate Mortgage Investment Conduit).

Moreover, there is no private right of action allowing Plaintiff to sue under the relevant portion of the IRC. *See Kloss v. RBS Citizens, N.A.*, 996 F.Supp.2d 574

(E.D. Mich. 2014). And standing to sue under the Securities Exchange Act is generally limited to investors who bought or sold securities affected by the alleged violation, which as a mere homeowner/borrower Plaintiff did not do. *See Jeffrey v. U. S. Bank Nat'l Ass'n for Structured Asset Inv. Loan Tr. Mortg. Pass Through Certificates Series 2004-2 & McCalla Raymer Leibert Pierce, LLC*, No. 1:17-CV-3751-TCB-LTW, 2018 WL 3702456, at *5 (N.D. Ga. May 29, 2018) (Walker, M.J.) (gathering authority), *report and recommendation adopted sub nom. Jeffrey v. U.S. Bank Nat'l Ass'n*, No. 1:17-CV-3751-TCB, 2018 WL 3702429 (N.D. Ga. June 20, 2018); *see also Daniels v. Bank of New York Mellon*, No. 17-CV-1303-CAB-WVG, 2017 WL 4541756, at *5 (S.D. Cal. Oct. 11, 2017) (explaining that only a purchaser or seller of securities has standing to bring an action for securities fraud and plaintiff, who appeared to base her claim on a belief that the securitization of the loan was fraudulent because it occurred without her consent, did not have standing to bring action); *Cirino v. GMAC Mortg., LLC*, No. SACV 11-1890 AG (JPRx), 2012 WL 12936624, at *3-4 (C.D. Cal. May 14, 2012) (finding that plaintiff had no standing because only a purchaser or seller of securities has standing to bring claims under the Security Exchange Act); *Medafor, Inc. v. CryoLife, Inc.*, No. 11-1920 (JRT/SER), 2012 WL 1072340, at *5 n.7 (D. Minn. Mar. 30, 2012) (explaining that party may have lacked standing to sue even if there was a private cause of action available under Section 12(g) because it probably did not purchase or sell opposing

party's securities during the relevant time period); *Bellow v. Chase Home Fin.*, No. 10cv1913 BTM (WVG), 2011 WL 133351, at *1 (S.D. Cal. Jan. 14, 2011) (plaintiff whose mortgage was sold into the secondary mortgage market could not bring a claim for securities fraud because he was not a purchaser or seller of security). Accordingly, Plaintiff has failed to state a claim for relief under the IRC or Securities Exchange Act.

C.    *Defendants' Motion to Stay*

Defendants have also filed a "Motion to Stay Discovery and Pretrial Deadlines" [11] ("Motion to Stay"). Defendants request that the Court stay discovery and pretrial deadlines until the Court issues a final ruling on the pending Motion to Dismiss. Plaintiff has filed a response opposing the Motion to Stay, in which she argues that "[g]eneralized claims of burden do not provide a basis to stay discovery and Plaintiff submits this motion is premature and unfounded." Pl. Resp. [13] at 1.

The Local Rules of this Court provide that the discovery period commences thirty days after the first defendant appears by filing an answer. LR 26.2, NDGa. In this case, because no Defendant has filed an answer, discovery has not begun, and the Court thus agrees with Plaintiff that the Defendants' request to stay discovery is premature. Nevertheless, the Defendants have also requested a stay of "all pretrial deadlines including the filing and serving of Initial Disclosures." Defs. Br. [11-1]

at 2. In her brief, although Plaintiff argues that the request to stay discovery is premature and unfounded, she does not appear to oppose the Defendants' request to stay pretrial deadlines, including the deadline for serving Initial Disclosures.

Accordingly, the Defendants' Motion to Stay [11] is **GRANTED IN PART, DENIED IN PART**. Because no Defendant has filed an answer and discovery has not begun, the request to stay discovery is **DENIED AS MOOT**. Defendants' request to stay pretrial deadlines, however, is **GRANTED**. The deadline for the parties to complete the Rule 26(f) early planning conference is **STAYED** until sixteen (16) days after the Court issues a final ruling on the Defendants' Motion to Dismiss, if such ruling is not dispositive of all claims. *See* LR 16.1, NDGa (the early planning conference must be held within sixteen days after the appearance of a defendant by answer or motion). The deadlines for the parties to serve the Initial Disclosures and file the Joint Preliminary Report and Discovery Plan are also **STAYED** until thirty (30) days after the Court issues a final ruling on the Defendants' Motion to Dismiss, if such ruling is not dispositive of all claims. *See* LR 26.1, NDGa (parties must serve initial disclosures required by Rule 26(a)(1) within thirty days after the appearance of a defendant by answer or motion); LR 16.2, NDGa (the Joint Preliminary Report and Discovery Plan must be filed within thirty days after the appearance of the first defendant by answer or motion).

## III.   CONCLUSION AND RECOMMENDATION

For the reasons discussed above, **IT IS RECOMMENDED** that the Defendants' Motion to Dismiss [9] be **GRANTED**, and that all claims in this action be **DISMISSED** for failure to state a claim for relief. Defendants' Motion to Stay [11] is **GRANTED IN PART, DENIED IN PART**.

As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned. Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

**IT IS SO ORDERED and RECOMMENDED** this 30th day of August, 2018.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

16